Martin MILLER, on behalf of himself and all others similarly situated, Plaintiff-Appellant,

v.

MACKEY INTERNATIONAL, INC., Consolidated Securities Corp., Joseph C. Mackey, et al., Defendants-Appellees.

No. 71–1276

Summary Calendar.*

United States Court of Appeals, Fifth Circuit.

Nov. 23, 1971.

---

* [1] Rule 18, 5 Cir.; see Isbell Enterprises, Inc. v. Citizens Casualty Company of New York et al., 5 Cir. 1970, 431 F.2d 409, Part I.

Bruce E. Lazar, Palmer & Lazar, Miami, Fla., for plaintiff-appellant.

Robert E. Venney, Miami, Fla., for defendants-appellees.

Before WISDOM, COLEMAN and SIMPSON, Circuit Judges.

WISDOM, Circuit Judge:

This appeal turns on the propriety of the district court's evaluating the substantive merits of a plaintiff's claims when passing on a motion for a class action and the validity of the grounds assigned in this case for the denial of a class action motion.

This case was originally filed as a class action by Martin Miller, Appellant in this Court, on behalf of himself and all others similarly situated, alleging violations of the Securities Act of 1933 and the Securities Exchange Act of 1934. Miller sued Mackey International, Inc., the issuer of 400,000 shares of common stock covered by a registration statement made effective by the Securities and Exchange Commission on April 21, 1969; Consolidated Securities Corp., the underwriter of the issue; Joseph C. Mackey, the principal stockholder and chief executive of Mackey International; and other defendants who were never served. Mackey International (Mackey) operates an air taxi service between points in Florida and points in the Bahama Islands, engages in land development in Bimini, and operates a real estate brokerage business in Florida. Miller, the purchaser of 100 shares of the public offering, alleges material omissions and false statements in the prospectus issued by Mackey. He predicates his cause of action on §§ 11, 12(2), and 17 of the Securities Act of 1933, 15 U.S.C. §§ 77k, 77*l*, and 77g, and § 10b of the Exchange Act of 1934, 15 U.S.C. § 78j (b).

Air service between Florida and the Bahamas is governed by Route 9 of the Bermuda Agreements, a bilateral treaty between the United States and the United Kingdom. In order for an American carrier to receive authorization to fly between Florida and the Bahamas, the carrier must be designated by the United States Government and receive a permit from the British Board of Trade.

Miller argues that the prospectus was deficient in three respects. First, according to Miller, the prospectus said that only Mackey International and Eastern Airlines held Route 9 operating permits. In fact, however, Chalk's Flying Service actually held a Route 9 permit

also,[1] and Chalk's is the principal air carrier between Florida and Bimini.

Second, Miller contends that the prospectus said that Mackey was subject to competition from only two airlines, Eastern Airlines and Bahamas Airways, while, in actuality, Chalk's was also a competitor holding a Route 9 permit. Finally, Miller argues that the prospectus failed to state that Mackey would be effectively excluded from revenues derived from air service to Bimini, where Mackey was engaged in real estate development, because of competition from Chalk's.

The answer of the defendants below and their brief in this Court deny the validity of Miller's claims on the merits. Besides arguing generally that the alleged omissions and false statements do not meet the test of Regulation C, Rule 405 of the Securities and Exchange Commission—facts about which "an average prudent investor ought reasonably to be informed before purchasing the securi-ty registered"—the defendants argue that each of the specific charges have no merit. First, they contend, based on inquiries by Chalk's to the Civil Aeronautics Board, that even Chalk's did not know it had a Route 9 permit and that the Mackey prospectus surely need not be clairvoyant. Second, they contend that an agreement, disclosed in the prospectus, between Mackey and Eastern Airlines precludes Mackey from operating between Florida and Bimini, Chalk's principal route, thus eliminating Chalk's as a competitor. Finally, they rely on the disclosure in the prospectus of this same agreement as sufficient to indicate Mackey's exclusion from the Bimini revenue.

■ Mackey's motion to dismiss for failure to state a claim upon which relief can be granted, F.R.Civ.P. 12(b), was denied by the district judge on September 23, 1970. Miller then filed a motion to determine the cause to be a class action, F.R.Civ.P. 23, which was

---

1. The relevant portion of the prospectus reads as follows

In connection with the merger of Mackey Airlines and Eastern Airlines in January, 1967, Joseph C. Mackey agreed, in part, that for five years from that time he would not be associated with (except with Eastern's consent) any business operating in air transportation in Florida or the Bahamas, or within 300 miles of such places. Subsequently, Eastern Air Lines agreed to the operation by him of an air taxi service within such area provided he would operate no scheduled service between any two points between which Eastern Air Lines provided scheduled service. At the present time this agreement, as so modified, prohibits the Company from operating between Miami/Fort Lauderdale on the one hand and Nassau, Bimini and Freeport on the other. Eastern Air Lines at any time has the authority to expand its operations to include flights from Florida points to the Out Islands of the Bahamas, but it is the belief of management that the routes intended to be operated by the Company would be of no interest to a trunk carrier.

The Company is also subject to competition by Bahamas Airways, a British carrier headquartered in Nassau. Bahamas Airways has the same international operating authority as the Company, since Bahamas has been named as a carrier by the British to the same routes. Historically, with the exception of Nassau, Freeport and West End, Bahamas has generally served the Out Islands of the Bahamas via connections in Nassau. At the present time Bahamas generally serves the Out Islands with no more than two flights daily. The Company will be serving these Islands with direct flights from the United States. Bahamas, however, has the authority to provide this service should they so choose. Either the United States or Great Britain may name an additional carrier or carriers should they desire.

Fares charged by the Company are no greater, and in some cases less, than those charged by its competitors. The Company is subject to competition from charter operation of aircraft and boats, but believes its fares to be less than the cost of such service. There is no regularly scheduled passenger ship transportation to the destinations served by the Company.

denied on December 22, 1970.[2] This appeal from that order followed. This Court has denied Mackey's motion to dismiss the appeal on jurisdictional grounds.[3]

Miller contends, first, that the denial of his motion to determine the cause to be a class action should be reversed because the district judge improperly considered the merits of Miller's claim when passing on the propriety of a class action, basically a procedural question. We agree.

■■ The district court's order (see footnote 2) in part stated:

\* \* \* considering the status of the alleged competitor and statements concerning other competition contained in the prospectus and that the alleged omitted competitor was not in direct scheduled competition with the Defendant, \* \* \* The Court finds that the requirements of Rule 23 are not presently apparent and it is, therefore, ordered that the *motion to determine this action to be a class action is denied.*

This portion of the order indicates to us that in passing on the propriety of the class action the district judge may have considered whether the petition stated a cause of action or whether Miller would succeed on the merits. This was improper. In determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met.

The determination whether there is a proper class does not depend on the existence of a cause of action. A suit may be a proper class action, conforming to Rule 23, and still be dismissed for failure to state a cause of action. Kahan v. Rosenstiel, 3 Cir. 1970, 424 F. 2d 161, 169. *See* Johnson v. Georgia Highway Express, 5 Cir. 1969, 417 F.2d 1122; Esplin v. Hirschi, 10 Cir. 1968, 402 F.2d 94; Eisen v. Carlisle & Jacquelin, 2 Cir. 1968, 391 F.2d 555; City of Philadelphia v. Emhart Corp., 50 F.R.D. 232 (E.D.Pa.1970); Berland v. Mack, 48 F.R.D. 121 (S.D.N.Y.1969); Fogel v. Wolfgang, 47 F.R.D. 213 (S.D.N.Y. 1969)[4]; Mersay v. First Republic Corp.

2. In pertinent part the order reads as follows:

\* \* \* considering the status of the alleged competitor and statements concerning *other competition contained in* the Prospectus and that the alleged omitted competitor was not in direct scheduled competition with the Defendant, and the Court also having considered the status of the Plaintiff Martin Miller as a person with more than usual knowledge concerning commercial air operations between the United States and the Bahama Islands, as he was an executive officer of a company that owned an aviation service in that area at the time that he purchased the stock in question. The Court finds that the requirements of Rule 23 are not presently apparent and it is, therefore, ordered that the motion to determine this action to be a class action is denied.

3. Our Order of April 29, 1971 read:
By the Court: It is ordered that the motion of appellees Mackey International, Inc., Consolidated Securities Corp., and Joseph C. Mackey, to dismiss the appeal, filed in the above styled and

numbered cause, is hereby denied. See J. Moore's Federal Practice, Vol. 9, Paragraph 100.13[9], Eisen v. Carlisle and Jacquelin, 2 Cir. 1966, 370 F.2d 119, 121, cert. denied 1967, 386 U.S. 1035, 87 S.Ct. 1487, 18 L.Ed.2d 598. *See also* Gosa v. Securities Investment Co., 5 Cir., 1971, 449 F.2d 1330. We do not believe that our earlier order on appealability conflicts with the recent decision of another panel of this Court. Appealability may be based, in the instant case, either on the "death knell" exception to the rule enunciated in *Gosa* or on the collateral order exception to 28 U.S.C. § 1291. *See* Cohen v. Beneficial Industrial Loan Corp., 1949, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528.

4. Defendants insist that the merits of plaintiffs' claims have a substantial bearing on this motion. Although there is support for such a proposition in the decision of one district judge in this circuit, Dolgow v. Anderson, 43 F.R.D. 472, 501–503 (E.D.N.Y.1968), I persist in the notion that Rule 23 does not require an advanced trial of the merits on a class action motion. See Cannon v. Texas Gulf

of America, 43 F.R.D. 465 (S.D.N.Y. 1968); *but see* Eisen v. Carlisle & Jacquelin, 52 F.R.D. 253 (S.D.N.Y.1971) (hearing before assessing cost of notice); Milberg v. Western Pacific R. R. Co., 51 F.R.D. 280 (S.D.N.Y.1970); Cannon v. Texas Gulf Sulphur Co., 47 F.R.D. 60 (S.D.N.Y.1969) (hearing before assessing cost of notice); Dolgow v. Anderson, 43 F.R.D. 472 (E.D.N.Y. 1968). Rule 23 delineates the scope of inquiry to be exercised by a district judge in passing on a class action motion. Nothing in that Rule indicates the necessity or the propriety of an inquiry into the merits. Indeed, there is absolutely no support in the history of Rule 23 or legal precedent for turning a motion under Rule 23 into a Rule 12 motion to dismiss or a Rule 56 motion for summary judgment by allowing the district judge to evaluate the possible merit of the plaintiff's claims at this stage of the proceedings. Failure to state a cause of action is entirely distinct from failure to state a class action.

Mackey relies on sub-division (c) (1) of Rule 23 as allowing if not requiring an assessment of the substantive claims. That sub-division provides in pertinent part:

> As soon as practicable after the commencement of an action brought as a class action, the court shall determine by order whether it is to be so maintained.

Mackey argues that the power to determine the propriety of use of the device envisions an evaluation of the merits. Although the language may appear to confer broad power, the Advisory Committee Notes make clear that a district judge is to consider only the specific requirements of sub-divisions (a) and (b) of Rule 23. The Committee stated with respect to sub-division (c) (1) of Rule 23:

> In order to give clear definition to the action, this provision requires the court to. determine, as early in the proceedings as may be practicable, whether an action brought as a class action is to be so maintained. *The determination depends in each case on satisfaction of the terms of subdivision (a) and the relevant provisions of subdivision (b).* (emphasis added).

Advisory Committee Notes, 39 F.R.D. 69, 104 (1966).

■ Mackey further contends that a district judge should assess the likelihood of success on the merits before approving a class action because of the grave consequences attendant upon the approval. Specifically, the defendants point out that approval of a class action will result in notice to shareholders of Mackey and that such notice will appear to laymen to be a tacit approval by a federal court of the claims presented in plaintiff's suit. Such notice, they argue, would seriously injure the financial position of Mackey and should not be allowed unless the claims presented in the suit have some merit. This Court cannot, however, rewrite the Federal Rules of Civil Procedure and seriously undermine the class action device in order to avoid dubious harm to these defendants. Purely vexatious litigation could be

---

Sulphur Co., 47 F.R.D. 60 (S.D.N.Y. March 20, 1969); Mersay v. First Republic Corporation of America, 43 F.R.D. 465 (S.D.N.Y.1968). On its face the new rule does not indicate that the merits are relevant, and it specifically requires the court to make an order concerning the nature of the action "[a]s soon as practicable after the commencement of an action brought as a class action * * *". Moreover, it would appear that to require the plaintiffs at a pre-trial hearing "to convince the Court that there is a substantial possibility that they will prevail on the merits," Dolgow v. Anderson, supra, 43 F.R.D. at 501, would have the effect of modifying the current law on summary judgment in cases where the only possible method for plaintiffs to proceed is by class action. Compare Eisen v. Carlisle & Jacquelin, 370 F.2d 119 (2d Cir. 1967) (Eisen I) with City of New York v. International Pipe and Ceramics Corp., 410 F.2d 295 (2d Cir. April 10, 1969).

Fogel v. Wolfgang, 47 F.R.D. 213, 214 fn. 4 (S.D.N.Y.1969).

halted by a Rule 12 motion to dismiss or a Rule 56 motion for summary judgment. Nothing would appear to prevent the defendants in this or other cases from sending material to the recipients of Rule 23 notice explaining their position on the merits of the claims. The specific requirements enumerated in Rule 23 are difficult to meet and represent additional obstacles to frivolous suits. Even if we were to assume that grave consequences to a defendant might follow from Rule 23 notice, such is not the situation presented here. Mackey has itself apprised its stockholders of this litigation. On March 30, 1970, a letter to stockholders signed by the company's President stated:

> On February 11 a stockholder with 100 shares of stock entered a civil action against the company in New York. The suit alleges that the registration statement and prospectus pertaining to our public offering contained untrue statements of material fact or omitted to state material facts. I do not wish to comment in detail on this action since our attorneys are in process of filing an answer. The company believes that this action is without merit and that the company has meritorious defenses against it.

Furthermore, Mackey has prepared and disseminated a Preliminary Prospectus dated January 27, 1971, for a proposed secondary public offering containing five paragraphs pertaining to the instant suit and describing the claims presented, explaining the company's position, and stating the company's opinion of ultimate success.

Finally, Mackey advances a strange basis for distinguishing those cases where courts have refused to consider the merits of plaintiffs' claims in determining the propriety of a class action. See Eisen v. Carlisle & Jacquelin, 2 Cir. 1968, 391 F.2d 555; Esplin v. Hirschi, 10 Cir. 1968, 402 F.2d 94; Kahan v. Rosenstiel, 3 Cir. 1970, 424 F.2d 161; Fogel v. Wolfgang, 47 F.R.D. 213 (S.D.N.Y.1969). Mackey contends that those cases involved "serious complaints," "serious allegations," and "serious charges." Even if we were to accept the "serious" standard and define that standard with such specificity so as to be possible of application, we surely would not hold that this case, alleging violations of the federal scheme for regulation of securities and involving thousands of dollars and many investors, is not "serious". Forbidding inquiry into the merits only when the charges are "serious" would require an examination of the merits to determine whether the charges are "serious" so that the standard applies and defeat the very purpose of the test. Such a test is unworkable if not completely improper. Mackey's parallel contention that class action treatment is not necessary here because this litigation is "simple" must similarly be rejected. Not only do we believe that this litigation does not fit defendant's own test, i. e. it is not simple, but also we find this test inappropriate, unworkable, and self-defeating.[5]

---

5. Mackey's reliance on Dolgow v. Anderson, 43 F.R.D. 472 (E.D.N.Y.1968) is not persuasive. First, although the District Court's opinion approves inquiry into the substance of the plaintiffs' claims before passing on a Rule 23 motion, we do not read the opinion of the Second Circuit in that case, Dolgow v. Anderson, 2 Cir. 1971, 438 F.2d 825, or their opinion in Green v. Wolf Corp., 2 Cir. 1968, 406 F.2d 291, as approving that procedure. Second, other cases in the Second Circuit can be read as disapproving the Dolgow procedure. See Eisen v. Carlisle & Jacquelin, 2 Cir. 1968, 391 F.2d 555; Berland v. Mack, 48 F.R.D. 121 (S.D.N.Y.1969); Fogel v. Wolfgang, 47 F.R.D. 213 (S.D. N.Y.1969) (see footnote 4); Mersay v. First Republic Corp. of America, 43 F.R. D. 465 (S.D.N.Y.1968). Third, those cases which approve the Dolgow procedure often do so in an entirely different context, i. e. a hearing before assessing cost of notice. See Eisen v. Carlisle & Jacquelin, 52 F.R.D. 253 (S.D.N.Y.1971); Cannon v. Texas Gulf Sulphur Co., 47 F.R.D. 60 (S.D.N.Y.1969). Finally, for the reasons discussed in the body of this opinion, we find the Dolgow procedure inadvisable.

We hold that the district judge improperly considered the merits of Miller's claim in passing on his class action request. Because of the utilization of this improper method, the order denying class action status must be reversed.

■ In addition to considering the substance of Miller's claims, the district judge denied the class action motion for yet another reason. His order also stated:

> * * * the Court also having considered the status of the Plaintiff Martin Miller as a person with more than usual knowledge concerning commercial air operations between the United States and the Bahama Islands, as he was an executive officer of a company that owned an aviation service in that area at the time that he purchased the stock in question. The Court finds that the requirements of Rule 23 are not presently apparent and it is, therefore, ordered that the motion to determine this action to be a class action is denied.

This portion of the order indicates that the district judge felt that Miller, because of his alleged personal knowledge, failed to meet one or more of the requirements of Rule 23. Although the Order does not specify the particular sub-division of Rule 23 which Miller fails to satisfy, it seems logical to conclude that the personal knowledge disqualified Miller, in the judgment of the district judge, because of either sub-division (a) (3) or (a) (4).

> One or more members of a class may sue or be sued as representative parties on behalf of all only if * * * (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Even assuming Miller's personal knowledge of air operations between Florida and the Bahamas would prevent his suit from being brought as a class action,[6] the record contains no evidence from which the district judge could conclude that Miller possessed such knowledge. The only possible source we can find in the record for the district judge's conclusion as to Miller's knowledge is the deposition of Captain Dean H. Franklin, the operator of Chalk's Flying Service. Yet, Captain Franklin merely stated that a representative of a company with which Miller was affiliated had attempted to acquire Chalk's and that Miller had participated in the negotiations. Nowhere in the deposition does Captain Franklin attribute to Miller any general or special or "more than usual" knowledge of air service between Florida and the Bahamas. If the district court inferred this knowledge, the inference was impermissible because wholly unsupported by the record as we read it.

Because the district judge's order leaves this Court unclear as to his reasons, other than those discussed in this opinion, for denying class action status, we must remand for a hearing on the question of the propriety of this cause being brought as a class action and for findings on that issue. We have held that in passing on the class action motion inquiry into the substance of Miller's claims was improper and that denial of class action status apparently because Miller possessed personal knowl-

---

6. We express no opinion on whether personal knowledge of air operations between Florida and the Bahama Islands would disqualify Miller from representing the shareholders of Mackey in a class action. Mackey contends that, because personal knowledge of Chalk's operations would serve as a defense to Miller's claims under §§ 11 and 12(2) of the Securities Act of 1933, Miller is an inappropriate representative. Miller argues, on the other hand, that, even assuming that he had actual knowledge of the facts concerning the statements in the Prospectus, such knowledge would affect his personal cause of action and his personal right to recovery and not render him an improper representative. As to this question, see Kaplan, Continuing Work of the Civil Committee: 1966 Amendments to the Rules of Civil Procedure (I), 81 Harv.L.Rev. 356, 393 (1967).

edge of local air operations is wholly unsupported by the present record. We are not, however, prepared to say that class action status was proper. The district judge may have other reasons, unexpressed in his brief order, for denying Miller's motion. In addition, other reasons for refusing class action status may exist outside of this abbreviated record and appear when the question is given a full hearing. We therefore vacate the order of the district judge and remand the case for proceedings not inconsistent with this opinion including a full hearing on the question presented and findings by the district judge.

Vacated and remanded.

Oakes, Circuit Judge, dissented and filed opinion.