J2FITZSIMMONS, Judge.
Defendant, Sid Richardson Carbon &■ Gasoline Company (Richardson), appealed the trial court’s certification of a class action. Richardson complained of the lack of common character and numerosity in the proposed class, and asserted a lack of evidence for setting the' geographic boundaries. We find that the certification of the class is premature in the face of individualized issues that predominate the common issues.[2] We reverse.
FACTS
According to the testimony of the proposed class representatives at the certification hearing, a “black powdery substance” has periodically settled on their property for years. The proposed representatives testified that they believed the substance was carbon black discharged from the Richardson plant. The specific damages repeated were an inconvenient, continuing need for periodic clean-up of houses,, cars, and outside areas, and less enjoyment of the outdoors.
*632 An analysis by Richardson of samples of the black substance failed to find a positive sample of carbon black. A monitoring station, maintained by Richardson in Addis, Louisiana, did record a few discharges of some type of carbonaceous material. However, these discharges were not in the direction of Addis on days asserted in initial pleadings by plaintiffs. The attempt to list specific dates was deleted by the plaintiffs in subsequent pleadings.
LEGAL PRECEPTS
For a class to be certified, the proposed class must meet the requirements of commonality, numerosity, and adequate representation. La. C.C.P. art. 591.[3] The burden is on the party seeking the class. Cotton v. Gaylord Container, 96-1958, 96-2029, 96-2049 p. 13 (La.App. 1st Cir. 3/27/97); 691 So.2d 760, 768, writ denied, 97-0800, 97-0830 (La.4/8/97); 693 So.2d 147. Although the requirements for class certification are not the likelihood that the class will prevail, sufficient facts must be alleged to show that the requirements of a class action exist. Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 177-78, 94 S.Ct. 2140, 2152-53, 40 L.Ed.2d 732 (1974); Miller v. Mackey International, Inc., 452 F.2d 424, 427-28 (5th Cir.1971). Unless the trial court abused its discretion and committed, manifest error, we should not reverse. Ellis v. Georgia-Pacific Corp., 550 So.2d 1310, 1313 (La.App. 1st Cir.1989), writ denied, 559 So.2d 121 (La.1990).
The plaintiffs in Ford v. Murphy Oil U.S.A., Inc., 96-2913, 96-2917, 96-2929 p. 9 (La.9/9/97); 703 So.2d 542, 547-48, argued that four sources emitted substances that, individually or combined, caused the harm. The supreme court in Ford relied on a combination of factors to find that the individual issues predominated over commonality: the need for testimony from individual claimants to establish which source and which different emission, or combination, harmed each claimant, the lack of dates that could be used to identify a source, the use of a wholly unproven “synergy” theory of tort, and “widely divergent types of personal, property, and business damages claimed....” Ford, 96-2913, 2917, 2929 at pp. 11-12 & 14; 703 So.2d at 548-50.
A mass tort is typically not a “true” class action. See Ford, 96-2913, 96-2917, 96-2929 at pp. 5-6; 703 So.2d at 545. However, “ ‘mass tort cases arising from a common cause or disaster may, depending upon the circumstances, satisfy the predominance requirement.’ ” Ford, 96-2913, 2917, 2929 at p. 13; 703 So.2d at 549, quoting Amchem Products, Inc. v. Windsor, — U.S..-, 117 S.Ct. 2231, 2250, 138 L.Ed.2d 689 (1997).
UCOMMONALITY
Richardson relies on Ford and argues that the lack of specific dates of emissions, the subjectivity of nuisance complaints, the possibility of multiple sources, and the lack of proof that the substance is carbon black and emitted by Richardson, are individual issues that predominate over any common issues.'
The petition cited general negligence and strict liability as the basis for suit, and alleged much more serious damages then those testified to by the proposed class representatives and claimants. Based on the testimony, the trial court defined the damages as “economic losses, inconvenience or nuisance resulting from emissions of carbon black.... ” Nuisance suits can rest on the differing perceptions of claimants. Mere inconvenience is not actionable. C.C. art 668. More information is needed to show that the damages are more than inconvenience or subjective complaints that would require individual testimony.
The plaintiffs here aré not claiming multiple sources. However, the defendant, Richardson, asserts that the black substance or sóot is from multiple sources in the area: the LSU Fire Training School, industrial flares, trucks, railroads, and agricultural fires. Additionally, a Richardson expert testified that *633 the analyzed samples of the black substance were not identified as carbon black. Review of the filters from the monitoring station, for the days initially alleged by plaintiffs as days when carbon black was emitted, evinced some type of carbonaceous emission, but not in the direction of Addis. Thus, Richardson made a showing sufficient to raise the specter of multiple sources. The existence of several possible sources at varying distances, without delineating dates, would lead to significant variations in evidence and the need for individual testimony. See Ford, 96-2913, 96-2917, 96-2929 at pp. 11-12 & .14; 703 So.2d at 548-5(L
IsAs in Ford, a combination of factors’ leads us to find the. proposed class lacks a “common character,” at this time: a continuous tort over a period of many years without specific dates, and in the absence of identifiable accidents, the presence of multiple sources of black carbonaceous soot in the area, and the possibility of subjective nuisance damages or mere inconvenience. As the need for individual testimony or evidence increases, commonality decreases. For these reasons, the trial court committed manifest error in certifying the class.
Of course, if the plaintiffs are able to resolve the issues of multiple sources and individualized, subjective damages, the class action may be appropriate. The trial court could subsequently grant or modify a requested class, if the legal requisites were met. See La.C.C.P. art. 593.1B (1996) (renumbered by Acts 1997, No. 839, § 1, as article 592A(3)(c)).
For these reasons, we reverse the certification of the class, and remand to the trial court for further proceedings. The costs are assessed to the plaintiffs.
REVERSED AND REMANDED.

. Because, of our finding that the class lacks commonality, we pretermit the issues of numer-osity and geographical boundaries.

. By Acts 1997, No. 839, § 1, the legislature incorporated into C.C.P. art. 591 the guidelines adopted by Stevens v. Board of Trustees of Police Pension Fund of City of Shreveport, 309 So.2d 144, 150-51 (La.1975). Acts 1997, No. 839, also significantly revised the Code of Civil Procedure articles covering class and derivative action. Changes, not previously recognized by the jurisprudence, are effective July 1, 1997.