Henry J. BASS et al.

v.

BOSTON FIVE CENT SAVINGS BANK.

Laurence CHAIT et al.

v.

WATERTOWN SAVINGS BANK.

Herbert FEINSTEIN et al.

v.

WALTHAM FEDERAL SAVINGS AND
LOAN ASSOCIATION.

Nathan LISKOV et al.

v.

CAMBRIDGEPORT SAVINGS BANK.

Henry PLOTNICK et al.

v.

SUFFOLK FRANKLIN SAVINGS
BANK.

Albert ZABIN et al.

v.

LEXINGTON TRUST CO.

Anna PANDISCIO

v.

SECURITY FEDERAL SAVINGS AND
LOAN ASSOCIATION OF
BROCKTON.

Anna PANDISCIO

v.

HOME OWNERS FEDERAL SAVINGS
AND LOAN ASSOCIATION.

Civ. A. Nos. 72–2282–C through
72–2889–C.

United States District Court,
D. Massachusetts.

Sept. 28, 1979.

Albert P. Zabin, Michael E. Mone, Joseph Schnieder, Boston, Mass., for Henry Bass, et al.

William S. Monahan, Harrison, Maguire & Monahan, Boston, Mass., for Boston Five Cents Savings Bank.

Albert P. Zabin, Michael E. Mone, Joseph Schneider, Boston, Mass., for Laurence Chait et al.

Robert F. White, Sherburne, Powers & Needham, Boston, Mass., for Watertown Sav. Bank.

Albert P. Zabin, Michael E. Mone, Joseph Schneider, Boston, Mass., for Herbert Feinstein et al.

James J. Myers, Paul F. Hannah, Gadsby & Hannah, Boston, Mass., for Waltham Federal Sav. and Loan Ass'n.

Albert P. Zabin, Michael E. Mone, Joseph Schneider, Boston, Mass., for Nathan Liskov et al.

Henry E. Foley, David W. Walker, William J. Cheeseman, Foley, Hoag & Eliot, Boston, Mass., for Cambridgeport Sav. Bank.

Thomas E. Connolly, Albert P. Zabin, Michael E. Mone, Joseph Schneider, Boston, Mass., for Henry Plotnick.

Gael Mahony, Hill & Barlow, Boston, Mass., for Suffolk Franklin Sav. Bank.

Michael E. Mone, Joseph Schneider, Boston, Mass., for Albert P. & Judith Zabin.

Alfred P. Tropeano, Lexington, Mass., Robert D. Canty, Gaston, Snow & Ely, Boston, Mass., for Lexington Trust Co.

Albert P. Zabin, Schneider, Reilly, Zabin, Connolly & Costello, P. C., Boston, Mass., for Anna Pandiscio.

George L. Wainwright, Brockton, Mass., for Security Federal Sav. & Loan of Brockton.

Bernard A. Dwork, Barron & Stadfeld, Boston, Mass., for Home Owners Federal Sav. & Loan Ass'n.

## OPINION

CAFFREY, Chief Judge.

In 1972 eight virtually identical actions were filed in this court. Each of the eight complaints alleged that a named defendant mortgagee bank had required, as a condition on the extension of credit under a mortgage agreement, that the plaintiff mortgagor property owners make monthly deposits in a tax escrow account with the defendant bank of ½ of the estimated annual real estate taxes on the mortgaged property. It was further alleged that although the defendant mortgagee bank enjoyed full use of the escrow funds until such time as the taxes became due to the taxing authority, it unlawfully refused to pay interest on the money held in escrow to the plaintiff property owner.

Count I alleged that the refusal to pay interest was the result of a conspiracy in the banking community in restraint of trade in violation of the Sherman Antitrust Act 15 U.S.C.A. § 1 et seq.

Count II alleged that the nonpayment of interest on the required escrow deposits was an illegal tie-in arrangement in violation of 15 U.S.C.A. §§ 1 and 2 and 12 U.S.C.A. § 1972.

Count III alleged that as to mortgagors who became mortgagors after July 1, 1969, the defendant had failed to disclose the costs incident to the defendant mortgagee's refusal to pay interest on the tax escrow deposit, in violation of the Truth in Lending Act, 15 U.S.C.A. § 1601 *et seq.* (TILA).

Four judges of this Court who are also parties to mortgage agreements have disqualified themselves from sitting on a trial or any other proceeding in these cases because plaintiffs purport to bring these actions as representatives of all other mortgagors of the defendant mortgagee banks.

Inasmuch as the same law firm represented all plaintiffs and because the factual and legal issues set forth in the eight complaints were substantially similar, the cases were determined to be "related" under local rule 8(e)(2) and all were assigned to one judge in the interest of judicial economy.

Over a period of fifteen months plaintiffs amended their complaints to add Count IV which alleged that the non-interest paying escrow account is the result of a reciprocal agreement which plaintiffs were forced to enter as a result of defendants' exercise of monopoly power in violation of the federal antitrust law 15 U.S.C.A. §§ 1 and 2. Plaintiffs in seven of the eight cases were also allowed to amend their complaints to add Count V which asserted an express and implied trust theories under State law and called upon the Court to exercise pendent jurisdiction.

Five defendants have filed the following motions:

In *Chait v. Watertown Savings Bank* (72–2283–C) the defendant has moved for dismissal of the plaintiffs' complaint which centers around a 1968 mortgage agreement.

In *Feinstein v. Waltham Federal Savings and Loan Association* (72–2284–C) the escrow account in issue had been provided for in the parties' December 1965 mortgage agreement. Defendant mortgagee has filed a motion to dismiss and for summary judgment.

The complaint in *Liskov v. Cambridgeport Savings Bank* (72–2285–C) involves a 1970 mortgage agreement. Defendant bank has pleaded in its answer that the complaint fails to state a claim upon which relief may be granted and has also filed a motion for summary judgment or judgment on the pleadings.

In *Plotnick v. Suffolk Franklin Savings Bank* (72–2286–C) the defendant moved for dismissal or summary judgment in response to plaintiffs complaint which is based on a 1964 mortgage agreement between the parties.

In *Zabin v. Lexington Trust Co.* (72–2286–C) the plaintiffs' claim is based on a mortgage agreement dated June 29, 1966. Defendant has filed motions to dismiss.

The motions currently before the Court for consideration also include plaintiffs' motions for determination of class action status in all eight cases and plaintiff's motion for partial summary judgment in *Liskov v. Cambridgeport Savings Bank.* The plaintiffs' motion for determination of class action status will be discussed first. Having in mind that, in large part the defendants' motions encompass the same issues, they will be discussed simultaneously thereafter.

## PLAINTIFFS' MOTIONS FOR DETERMINATION OF CLASS ACTION STATUS

Fed.R.Civ.P. 23(a) lists four prerequisites to a class action:

(1) the class is so numerous that joinder of all members is impracticable,

(2) there are questions of law or fact common to the class,

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and

(4) the representative parties will fairly and adequately protect the interests of the class.

Fed.R.Civ.P. 23(b) provides that a class action may be maintained if the requirements of 23(a) are satisfied and in addition (1) the prosecution of separate actions would create a risk of establishing incompatible standards of conduct for the party opposing the class as a result of inconsistent or varying adjudications or that adjudication as to individual members would as a

practical matter dispose of the interests of other members not parties to the adjudication or substantially impair or impede their ability to protect their interests, or (2) the party opposing the class has acted or refused to act on grounds generally applicable to the class thereby rendering injunctive or declaratory relief as to the whole class appropriate, or (3) the Court finds that the questions of law or fact common to the members of the class predominate over any questions effecting only individual members and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

■ Because the declaration of class representation is attended by serious consequences, plaintiff has the burden of establishing compliance with Fed.R.Civ.P. 23. *Cook County College Teachers Union, Local 1600, A.F.T. v. Byrd,* 456 F.2d 882 (7th Cir.), cert. denied, 409 U.S. 848, 93 S.Ct. 56, 34 L.Ed.2d 90 (1972); *Philadelphia Electric Co. v. Anaconda American Brass Co.,* 43 F.R.D. 452 (E.D.Pa.1967). The complaint must allege the existence of facts which satisfy the requirements of that rule. *Cook County College Teachers Union, Local 1600, A.F.T. v. Byrd, supra. Gillibeau v. City of Richmond,* 417 F.2d 426 (9th Cir. 1969); 7A *Wright and Miller Federal Practice and Procedure:* Civil § 1798 at 241–242 (1972).

Although plaintiffs in each of the eight consolidated complaints now under consideration by the Court allege that the class consists of all mortgagors of each of the eight defendant mortgagee banks who are "too numerous to permit practical joinder", beyond that numerosity they allege no facts which would render the class action procedure appropriate here.

■ While it is clear that a party seeking to utilize the class action format need not establish the merits of his case before a preliminary determination of the class action question can be made *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974); *Wilcox v. Commerce Bank of Kansas,* 474 F.2d 336 (10th Cir. 1973); *Miller v. Mackey International, Inc.,* 452 F.2d 424 (5th Cir. 1971); *Philadelphia*

*Electric Co. v. Anaconda American Brass Co., supra,* before an evidentiary hearing need be afforded, plaintiffs should make a minimal showing that their class action claims have substance. *Rossin v. Southern Union Gas Co.,* 472 F.2d 707 (10th Cir. 1973).

■ In light of the foregoing and because the tolling of the statute of limitations insures no damage will result to purported class members by denying class action status in this case despite the excessive passage of time. *American Pipe & Construction Co. v. Utah,* 414 U.S. 538, 94 S.Ct. 756, 38 L.Ed.2d 713 (1974), plaintiffs' motions for class action status should be denied.

*Count I*

■ In count one of their complaints, plaintiff mortgagors allege that they have been required as a condition of obtaining their mortgages, to make monthly deposits of one twelfth of their annual property taxes, with the defendant mortgagees, and that the defendants have declined to pay interest on the amounts so deposited. Plaintiffs further allege that defendants' failure to pay interest is the result of "agreements, combinations and conspiracies with other banks, lending institutions and organizations" in violation of 15 U.S.C.A. § 1.

Although they make their allegations in individual complaints, all plaintiffs have used the same words to allege the existence of the same conspiracy. All five complaints were filed on the same day at a time when all plaintiffs were represented by the same counsel. Clearly, therefore, when they alleged the existence of a conspiracy in count one of their complaints, all plaintiffs had access to the same information.

It is not possible to determine from the complaints themselves exactly what that information was. Plaintiffs' allegations of conspiracy are conclusory and do not recite operative facts as required by the ruling in *Heart Disease Foundation v. General Motors Corp.,* 463 F.2d 98 (2d Cir. 1972). However, in the time period which has elapsed

since the complaints were filed, discovery in three of the five cases [1] has revealed that plaintiffs had only two bases for their conclusory allegations of conspiracy:

(1) that virtually all banks require such an interest free tax escrow arrangement as a condition of extending credit in real estate mortgage cases

(2) that banks have joined together to lobby against bills which would reform that practice.

I rule that, even assuming that both of these basis exist in fact, defendants are entitled to summary judgment on count one.

■ Parallel behavior itself does not constitute a Sherman Act offense. It is merely circumstantial evidence of the existence of a conspiracy which violates the act, *Theatre Enterprises, Inc. v. Paramount Film Distributing Corp.*, 346 U.S. 537, 540–41, 74 S.Ct. 257, 98 L.Ed. 273 (1954), and the probative value of such parallel behavior varies depending on the circumstances in which it is found *Delaware Valley Marine Supply Co. v. American Tobacco Company*, 297 F.2d 199 (3rd Cir. 1961), *cert. denied* 369 U.S. 839, 82 S.Ct. 867, 7 L.Ed.2d 843 (1962). Discovery has revealed that plaintiffs have no knowledge of circumstances which cast suspicion on the parallel business behavior in this case. It is just as likely therefore that the banks acted independently as it is that they acted pursuant to an agreement. Illegal conduct will not be presumed.

As stated by counsel for Cambridgeport Savings in his memorandum "the plaintiffs' contention is that, adorned with no more than the knowledge that a business policy is common to the mortgage industry, they are entitled to select some members of the industry at random and to root through their files and records in the hope of finding some hard evidence of an agreement."

While we believe that the plaintiff is entitled to all favorable inferences, he is not entitled to build a case on the gossamer threads of whimsey, speculation and conjecture.

*Hahn v. Sargent*, 523 F.2d 461, 467 (1st Cir. 1975), *quoting, Manganaro v. Delaval Separator Co.*, 309 F.2d 389, 393 (1st Cir. 1962).

■ Similarly the combined lobbying efforts of defendants and others in the banking industry lend no support to plaintiffs' allegations of conspiracy. It is clear that the antitrust laws do not prohibit combinations for the purpose of influencing legislation. *Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961). Evidence of an agreement between the defendants and others to unite their lobbying efforts would therefore not provide the basis for a claim under 15 U.S.C.A. § 1. Additionally, the fact that the banks joined together for a lawful purpose is not evidence that they joined together for an unlawful one. Therefore no inference may be drawn from the existence of such an agreement which casts suspicion on the parallel behavior discussed above.

In light of the foregoing and without considering the other defenses raised, I rule that summary judgment should enter for the defendants on count one.

### Count II

Count two alleges that requiring a mortgagor to make a monthly deposit with the mortgagee of one twelfth of the annual real estate taxes assessed against the mortgaged property as a condition of obtaining a mortgage constitutes an illegal tie-in arrangement in violation of 12 U.S.C.A. § 1972 and 15 U.S.C.A. §§ 1 and 2. Plaintiffs' theory is that such a tax escrow account requires plaintiffs to provide additional property to the defendant banks as a condition to the extension of credit.

■■ As a general rule, statutes have prospective effect unless the legislature clearly manifests its intention that the statute act retrospectively. There is no indication of any such intent in the legislative history of § 1972 or in the act itself. There-

---

1. *Feinstein v. Waltham Federal Savings and Loan Association, Liskov v. Cambridgeport Savings Bank*, and *Plotnick v. Suffolk Franklin Savings Bank*.

fore, since 12 U.S.C.A. § 1972 became effective on December 31, 1970 it has no applicability to the five mortgage agreements currently under the court's consideration which were all executed prior to that date.

Plaintiffs also contend in count two that the mandatory tax escrow account constitutes a tying arrangement in restraint of trade which violates 15 U.S.C.A. §§ 1 and 2.

Defendants Waltham Federal Savings and Loan Association and Suffolk Franklin Savings Bank maintain that any claims against them under the Sherman Antitrust Act are banned by the statute of limitations. At least insofar as the allegations of count two are concerned, this court so rules.

■ The mortgage agreement between the Feinsteins and Waltham Federal Savings and Loan Association was executed in 1965. The mortgage agreement between the Plotnicks and Suffolk Franklin Savings Bank was executed in 1964. 15 U.S.C.A. § 15b provides:

Any action to enforce any cause of action under sections 15 or 15a of this title shall be forever barred unless commenced within four years after the cause of action accrued . . .

I rule that if those agreements constituted illegal tying arrangements plaintiffs had four years after the agreements were executed to bring suit in the United States District Court pursuant to 15 U.S.C.A. § 15 and that the statute of limitations had run as to both actions prior to July 24, 1972 when the complaints were filed.

Accordingly, the motions to dismiss of defendants Waltham Federal Savings and Loan Association and Suffolk Franklin Savings Bank should be allowed as to count two and the court will go on to consider the allegations of illegal tying arrangements under the Sherman Antitrust Act only against the three remaining defendants.

■ The Sherman Act forbids the extension of market dominance over one product into the market for another product by making the purchase of the first product a condition of purchasing the second.

In *Fortner Enterprises, Inc. v. United States*, 394 U.S. 495, 507, 89 S.Ct. 1252, 22 L.Ed.2d 495 (1969), the Supreme Court stated that the preliminary determination to be made at the outset of every tie-in case is whether two separate products are in fact involved. Plaintiffs contend that in order to obtain credit from the defendants, the plaintiffs were also required to accept defendants' tax escrow services. The issue therefore is whether extension of credit and tax escrow services are two separate services or separate elements of the same service.

■ In *Stavrides v. Mellon National Bank & Trust Co.*, 353 F.Supp. 1072 (W.D. Pa.1973) the court ruled that a complaint containing similar factual allegations stated a claim upon which relief could be granted. This court agrees "whether the defendants are selling one product or two, whether there is any legitimate business justification for the escrow requirement, and whether the escrow service is an ancillary part of the loan itself are clearly questions of disputed fact" *Stavrides v. Mellon National Bank & Trust Co., supra* at 1077. Therefore, the motions of the remaining three defendants for dismissal or judgment on count two should be denied.

### Count III

In count three of their complaints, plaintiffs allege that as to plaintiffs who became mortgagors after July 1, 1969 the defendants have failed to disclose the costs incident to the defendants' refusal to pay interest on tax escrow deposits. Plaintiffs contend that such a failure to disclose violates the TILA 15 U.S.C.A. § 1601 *et seq.* and the regulations promulgated thereunder, specifically 12 C.F.R. 226.1 *et seq.*

■ As discussed above, the court has denied class action status to the plaintiffs in all eight of the consolidated cases now before it. As a result, the allegations of count three fail to state a claim upon which relief can be granted in *Chait v. Watertown Savings Bank* (72–2283–C), *Feinstein v. Waltham Federal Savings and Loan Assoc.* (72–2284–C), *Plotnick v. Suffolk Franklin Sav-*

*ings Bank* (72–2286–C) and *Zabin v. Lexington Trust Co.* (72–2287–C) because the mortgage agreements of the individual plaintiffs in those cases were executed prior to the effective date of the statute. Accordingly the motions to dismiss of the defendants in those cases should be allowed as to count three.

In *Liskov v. Cambridgeport Savings Band* (72–2285–C) the mortgage agreement at issue was executed in 1970, after the effective date of the disclosure provisions. Notwithstanding that fact, however, plaintiff is not entitled to recover under the TILA.

■ The TILA specifically exempts escrows for future payment of taxes from disclosure 15 U.S.C.A. § 1605(e)(3), 12 C.F.R. 226.4(e). *Stavrides v. Mellon National Bank & Trust*, 487 F.2d 953 (3d Cir. 1973) and even if such costs were not exempt from disclosure, actions brought under the TILA are subject to a one year statute of limitations. 15 U.S.C.A. § 1640(e). Reference to the case file establishes that when plaintiffs filed their action on July 24, 1972, the statute of limitations had already run as to their mortgage agreement with the defendant.

Accordingly, defendant Cambridgeport Savings Bank's motion for summary judgment should be allowed as to count three.

### Count IV

■ In count four, plaintiffs allege that the defendant mortgagees acting in concert with other banks have monopoly power in the real estate credit market in Massachusetts. Plaintiffs further allege in count four that the defendants have made use of that monopoly power by imposing upon plaintiffs a reciprocal agreement under the terms of which defendants extend credit to plaintiffs in return for which plaintiffs deposit money with the defendants in interest free accounts. Plaintiffs contend that these are reciprocal agreements which violate the Sherman Antitrust Act, 15 U.S.C.A. § 1. I rule that such a practice, even if established at trial, would not constitute a reciprocal dealing arrangement.

Reciprocity is basically the policy of favoring one's customers in purchasing commodities sold by them." *United States v. Penick and Ford, Ltd.*, 242 F.Supp. 518, 521 (D.N.J.1965). To hold that the plaintiffs' willingness to open interest free accounts was a "product" would stretch the concept of reciprocity too far. *Stavrides v. Mellon National Bank & Trust Co., supra* at 1077. Count four should be dismissed as to all five defendants.

### Count V

In count five of their complaints the plaintiff mortgagors ask the court to exercise pendent jurisdiction over a claim which is based on state law. Plaintiffs allege that the defendant mortgagees are accountable to them for monies earned through the investment of funds which plaintiffs deposited in tax escrow accounts as required by their mortgage agreements.

Plaintiffs' theory appears to be that any monies earned through the investment of the tax escrow funds were held by the defendant mortgagees in trust for the benefit of the plaintiff mortgagors by reason of trusts created by the mortgage instruments. Plaintiffs further assert that even in the absence of express trusts created by the agreements, the court should impose constructive trusts because each of the defendant mortgagees has been unjustly enriched by the tax escrow arrangements.

A copy of the mortgage agreement form used by each defendant mortgagee has been filed in each of the five cases which have motions currently under consideration. Because the court will refer to the copies of those agreements in the process of ruling on the motions before it, those motions will be treated as motions for summary judgment as to count five.

■ I rule that the mortgage agreements filed in these cases are integrated agreements which are subject to the parol evidence rule. Restatement (Second) of Contracts §§ 235, 239 (Tent. Drafts Nos. 1–7, 1973) and that the court may as a matter of law interpret those agreements to determine the understanding of the parties.

*Robert Industries Inc. v. Spence,* 362 Mass. 751, 755, 291 N.E.2d 407 (1973).

Four of the five agreements in question [2] provide for the payment of monthly estimated tax payments into an escrow account and contain no provision with regard to the investment of those funds or the payment of interest of the mortgagor.

 Under Massachusetts law, a mortgagor who claims that the bank does not have the right to treat tax escrow funds as its own, must show a clear understanding of that effect, *Carpenter v. Suffolk Franklin Savings Bank,* 370 Mass. 314, 346 N.E.2d 892 (1976). I rule that due to the absence of any provision in the contract tending to show such a clear understanding between the parties, no trusts were created by those agreements as a matter of law.

In the case of *Feinstein v. Waltham Federal Savings and Loan Association* (72–2284–C) the agreement required the plaintiff to make monthly tax escrow payments to the mortgagee "in trust" but no provisions were included for the investment of those funds or the payment of interest. In addition, plaintiff Feinstein testified in deposition that he knew at the time that he entered the agreement that he would not be paid interest on the amounts deposited in the escrow account. In light of the foregoing, I rule that no trust was created by the mortgage agreement in that case.

The plaintiffs also contend that the court should impose constructive trusts because the defendant mortgagees have been unjustly enriched. I rule that even assuming all of plaintiff's allegations to be true, in the absence of an allegation of fraud under Massachusetts law no such unjust enrichment has occurred as to justify the imposition of a constructive trust in this case *Carpenter v. Suffolk Franklin Savings Bank, supra.* Accordingly, summary judgment should enter for the five defendants as to count five.

**2.** Those four agreements are the agreements at issue in *Chait v. Watertown Savings Bank* (72–2283–C), *Liskov v. Cambridgeport Savings*

PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT IN *LISKOV V. CAMBRIDGEPORT SAVINGS BANK*

Plaintiffs' motion for partial summary judgment in *Liskov v. Cambridgeport Savings Bank* should be denied.

*Bank* (72–2285–C), *Plotnick v. Suffolk Franklin Savings Bank* (72–2286–C), and *Zabin v. Lexington Trust Co.* (72–2287–C).