Michael and Leesa FERGUSON *v*. The KROGER CO.

00-744                                              37 S.W.3d 590

Supreme Court of Arkansas
Opinion delivered February 8, 2001

*Dover & Dixon, P.A.*, by: *David A. Couch*, for appellants.

*Hilburn, Calhoon, Harper, Pruniski & Calhoun, Ltd.*, by: *James M. McHaney, Jr.*, and *Phil Campbell*, for appellee.

R OBERT L. BROWN, Justice. This is an appeal by appellants Michael and Leesa Ferguson in which they claim that the trial court erred in refusing to certify a class of people who allegedly had been misled and damaged by appellee The Kroger Co.'s double-coupon promotion. We disagree that the trial court erred in denying class certification, and we affirm the trial court's order.

This case arises out of Kroger's double-coupon advertising campaign. The time frame specified by the Fergusons in their complaint is 1990 through 1992. During that period, Kroger advertised to the general public that it would double the value of a manufacturer's coupon for goods on particular days. The value of that doubled coupon would then be deducted against the price of the product. During this time period, Kroger discounted the amount of state sales tax against the enhanced coupon value. The net result was that customers did not receive the full double-coupon value. Rather, they received the double-coupon value less the sales tax on the enhanced value, which was remitted to the applicable state revenue department by Kroger. Kroger admits that this occurred in the 1990-92 time frame and that in 1992, it reprogrammed its computer software to eliminate the sales tax deduction from the value of the double coupon.

On September 15, 1993, the Fergusons filed their original complaint against Kroger in the United States District Court for the Eastern District of Arkansas. In 1994, the District Court dismissed this complaint due to lack of subject-matter jurisdiction because no individual claim exceeded $50,000. In 1995, the Fergusons refiled their complaint in the Pulaski County Circuit Court. In 1996, they amended their complaint to eliminate any claim relating to taxes and instead focused on allegations of false and misleading advertising by Kroger. They asserted causes of action for negligence, breach of contract, unjust enrichment, misrepresentation, and conversion. A motion to certify the matter as a class action accompanied the amended complaint. In that motion, as well as in the amended complaint, the Fergusons contended that Kroger had overcharged customers in seventeen states, in addition to Arkansas, and that the company had admitted that the overcharges approximated $500,000. Later discovery showed that in fourteen states, including Arkansas, the amount of taxes improperly collected on

the doubled coupon by Kroger and remitted to the various state treasuries was $6,135,188 for the 1990-92 time period.

The trial court scheduled a hearing on the Fergusons' motion to certify the class. At that hearing, the court heard testimony from witnesses, including expert witnesses — Jay Marsh for the Fergusons and Dr. Charles Venus for Kroger. On December 3, 1999, the court entered its order denying class certification. The court found that it was without jurisdiction to order the treasuries of other states to refund tax revenues. It concluded its findings as follows:

> The Plaintiffs failed to meet their burden of proving the requirements of commonality, predominance, superiority, and adequacy. The claims in this action are based on potential class members' individual perceptions of Kroger's double coupon advertising program and the expectations associated with those perceptions. Preliminary issues of the class members' perceptions and expectations of the advertising must be resolved on an individual basis before common issues can be addressed, thus individual issues predominate over common ones in this lawsuit. *See Arthur v. Zearley*, 320 Ark. 273, 895 S.W.2d 928 (1995); *see also Mega Life & Health Ins. Co. v. Jacola*, 330 Ark. 261, 954 S.W.2d 898 (1997). Therefore, a class action is not superior to the use of individual actions to resolve the issues in this action. Moreover, the Plaintiffs have not demonstrated that they are adequate class representatives. They failed to prove that they are ready, willing, and able to commit the financial resources necessary to give notice of the cause of action to potential class members.

The focal point of the Fergusons' appeal is that the trial court erred in its findings relating to the required prerequisites set out in Ark. R. Civ. P. 23(a) and (b). Rule 23 reads in pertinent part:

> (a) *Prerequisites to Class Action.* One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

> (b) *Class Actions Maintainable.* An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied,

and the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

■ As an initial matter, this court has made it clear that we will not reverse a trial court's ruling on class certification absent an abuse of discretion. *See, e.g., Fraley v. Williams Ford Tractor & Equipment*, 339 Ark. 322, 5 S.W.3d 423 (1999); *Seeco, Inc. v. Hales*, 330 Ark. 402, 954 S.W.2d 234 (1997); *Mega Life & Health Ins. Co. v. Jacola*, 330 Ark. 261, 954 S.W.2d 898 (1997). We turn then to the prerequisites for class certification and specifically to questions relating to the size and extent of the class.

■ Kroger argues in its brief on appeal that it is virtually impossible to identify members of the proposed class and, thus, impossible to define the class. We agree. We acknowledge at the outset that defining the class size is not a specified prerequisite to class certification under Rule 23. But that alone does not decide the issue. This court has held that the exact number of a class need not be proved as a prerequisite for class certification. *See Mega Life & Health Ins. Co. v. Jacola, supra; Cheqnet Systems, Inc. v. Montgomery*, 322 Ark. 742, 911 S.W.2d 956 (1995); *see also I Newberg on Class Actions*, § 3.05 (3d ed. 1992). But at the same time, we subscribe to the recognized principle that in order for a class to be certified, a class must exist and that this is implicit in Rule 23. The treatise, *Moore's Federal Practice*, states the proposition succinctly and the reasoning behind it:

> It is axiomatic that in order for a class action to be certified, a class must exist. The definition of the class to be certified must first meet a standard that is not explicit in the text of Rule 23, that the class be susceptible to precise definition. This is to ensure that the class is neither "amorphous," nor "imprecise." Concurrently, the class representatives must be members of that class. Thus, before a class can be certified under Rule 23, the class description must be sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member of the proposed class. Furthermore, for a class to be sufficiently defined, the identity of the class members must be ascertainable by reference to objective criteria.

5 Jeremy C. Moore, *Moore's Federal Practice* § 23.2(1) (Matthew Bender 3d ed. 1997). A second distinguished treatise echoes these principles that class identity must be feasible and that the class cannot be excessively broad or amorphous. 7A Charles Alan Wright, Arthur R. Miller, Mary Kay Kane, *Federal Practice & Procedure* § 1760 (2d ed. 1986); *see also Adashunas v. Negley*, 626 F.2d 600 (7th Cir. 1980) (proposed class of all children with learning disabilities too difficult to identify and not adequately defined); *Intratex Gas Co. v. Beeson*, 22 S.W.3d 398 (Tex. 2000); *Hamilton v. Ohio Savings Bank*, 82 Ohio St. 3d 67, 694 N.E.2d 442 (1998). Clearly defining the class insures that those people who are actually harmed by the defendant's wrongful conduct will participate in the relief ultimately awarded. *See Simer v. Rios*, 661 F.2d 655 (7th Cir. 1981). Whether a class exists is a question of fact that will be determined by the circumstances of each case. *Id. See Adashunas v. Negley, supra.*

■ In affirming or directing the certification of class actions in recent years, this court has implicitly recognized that a class must be susceptible to definition and cannot be amorphous or imprecise. *See, e.g., BNL Equity Corp v. Pearson*, 340 Ark. 351, 10 S.W.3d 838 (2000) (proposed class to consist of purchasers of UAC stock after first and second offerings; approximately 1,841 investors); *Fraley v. Williams Ford Tractor and Equipment Co., supra,* (proposed class could consist of 429 persons since those persons allegedly had not received their insurance premium refunds); *Seeco, Inc. v. Hale, supra,* (proposed class of royalty owners allegedly defrauded consisted of more than 3,000 persons); *Mega Life & Health Ins. Co. v. Jacola, supra,* (proposed class consisted of approximately 400 persons who allegedly were misled into believing that their health insurance policies were group policies); *Cheqnet Systems, Inc. v. Montgomery, supra,* (proposed class of about 3,000 persons who were allegedly charged $10 more for debt collection than the law allowed); *Summons v. Missouri Pacific Railroad*, 306 Ark. 116, 813 S.W.2d 240 (1991) (proposed class of about 3,500 persons, who allegedly were evacuated due to derailment of a chemical tank car); *Lemarco, Inc. v. Wood*, 305 Ark. 1, 804 S.W.2d 724 (1991) (proposed class of about 800 persons allegedly defrauded by promises of gifts for entering into retail installment membership contracts); *Int'l Union of Elec., Radio & Mach. Workers v. Hudson*, 295 Ark. 107, 747 S.W.2d 81 (1988) (proposed class of salaried and hourly employees consisting of sev-

eral hundred employees who sued union for loss of pay and personal and property damage due to strike).

Just last year, this court reversed and remanded a case where the trial court had certified a class consisting of persons allegedly exposed to toxins following an explosion and fire at an agricultural packaging plant in West Helena. *See BPS, Inc. v. Richardson*, 341 Ark. 834, 20 S.W.3d 403 (2000). Plaintiffs in that case had alleged class membership of between 16,000 and 20,000 members. The trial court found that the class met the numerosity requirement of Ark. R. Civ. P. 23(a) but gave no indication of what the class membership would be. We pointed out in our opinion that we "cannot be certain of: (1) the number of members in the class which the trial court used to determine whether the numerosity requirement was met (estimated size of the class ranged from 100 members to 20,000 members) ...." *BPS, Inc.*, 341 Ark. at 850, 20 S.W.2d at 411. We remanded for the trial court to make factual findings relating to the approximate size of the class and regarding other points as well.

■ In the case at hand, the Fergusons presented the trial court with a proposed class of people who were misled into shopping at a Kroger store because of double-coupon advertisements. These people, according to the Fergusons, were misled because they did not receive the full double-coupon discount owing to the assessment of the sales tax against the doubled value. This means that in order to identify a class member for the proposed class, it must be shown:

> (a) that the shopper saw or heard about a double-coupon advertisement by Kroger;
>
> (b) that the shopper went to a Kroger store on double-coupon day because of the double-coupon advertisement;
>
> (c) that the shopper did not expect the sales tax to be deducted from the enhanced value of the coupon or that the shopper was misled to believe that a sales tax would not be assessed against the double coupon;
>
> (d) that the sales tax was wrongfully assessed against the enhanced value due that shopper;

(e) that the shopper can prove by sales receipts that he or she used a double coupon and did not receive the full value of the double-coupon discount.

Added to the mix is the fact that the Kroger advertisements for double coupons in the affected states and local communities varied insofar as the medium used to promote the advertisement (newspapers, direct mail, door hangers) as well as the content of the advertisement. Identifying class membership is also made more difficult by the passage of time and changes in the shoppers' circumstances. In light of these facts, we view the Fergusons' ability to define the class to be all but insurmountable. Arguments and proof presented at the hearing before the trial court as well as the Fergusons' brief on appeal do little to allay our concerns.

■ We affirm the trial court's denial of the motion to certify the class. In doing so, we recognize that we are affirming the trial court for a different reason than what it specified in its order. Nevertheless, we have acknowledged our authority to do so. *See State of Washington v. Thompson*, 339 Ark. 417, 6 S.W.3d 82 (1999); *McDonald v. Pettus*, 337 Ark. 265, 988 S.W.2d 9 (1999). Suffice it to say that we conclude that in order to have a class action there must be a defined class that will make it administratively feasible for a court to determine membership in that class. Here, a defined class does not exist.

■ The Fergusons also contend that the trial court erred in allowing Dr. Charles Venus to testify as an expert witness for Kroger because his name was not furnished until ten days before the hearing. Kroger responds that the reason the name was not furnished is that it did not make the decision to call Dr. Venus until after deposing the Fergusons' expert witness, Jay Marsh. We do not agree that the trial court abused its discretion in allowing Dr. Venus to testify. Kroger was not able to depose Mr. Marsh until ten days before the hearing, and after that deposition, it disclosed the fact that Dr. Venus would testify as a rebuttal witness to Mr. Marsh. This does not appear to be an unreasonable explanation for Kroger's actions. Moreover, the Fergusons had the opportunity to depose Dr. Venus during the ten-day period before the hearing. There was no abuse of discretion by the trial court. *See Farm Bureau Mutual Ins. Co. of Arkansas, Inc. v. Foote*, 341 Ark. 105, 14 S.W.3d 512 (2000).

Because we are affirming on the basis of the Fergusons' failure to define the class sufficiently, we need not address the trial court's findings that it lacked subject-matter jurisdiction to order other state treasuries to refund tax revenues or the inability of the class representatives to pay for notice to potential class members as a reason for disqualification.

Affirmed.